Michael Catalano, J.
This is a proceeding pursuant to article 78 of the Civil Practice Act to review a determination of the Buffalo Zoning Board of Appeals, denying petitioner’s application for a building permit, to enlarge premises at No. 2 Jersey Street, Buffalo, New York, for the erection of a two-story building to he used as a garage and for pin storage in connection with his bowling alleys, constituting a nonconforming use.
On August 14, 1961, petitioner applied for this permit which was denied on August 30,1961 by the Director of Buildings. An immediate appeal was taken to the respondent board. On September 1, 1961, the board noticed a hearing of the appeal for September 13,1961. On September 6, 1961, the Erie county Planning Department was notified of this application. At the September 13, 1961 hearing, the board reversed the Director of Buildings and approved the application by a unanimous vote of 5 to 0. Five days later, the board received the recommendation of the Planning Department for denial “ because it would make practically impossible the construction of a much needed pedestrian overpass across the Thruway to the park.” The next day, September 19,1961, the board voided its action of September 13 as “ contrary to law.” On October 11, 1961, at another noticed meeting of the board, the application was reconsidered and all interested persons heard, resulting in a vote of 3 for and 2 against approval, thereby denying the application. Only one member of the board gave his reasons for denial; only one other gave his reasons for approval.
The question is: Did the board properly refuse to reverse the decision of the Director of Buildings ?
Petitioner argues that the decision of 5 to 0 on September 13, 1961 was neither premature nor illegal; the board contends it was both. Petitioner believes that the 3 to 2 decision of October 11,1961 was sufficient for reversal; the board maintains a 4 to 1 decision was required.
The divergent views stem from different readings of section 81 of the General City Law and section 239-m of the General Municipal Law.
*248 A clear understanding of the New York scheme of corporate law is needed for the answer. The statutory enactments covering this conglomerate body may be likened to a tree; the roots being the State Constitution; the trunk, the General Corporation Law; one branch, the General Municipal Law; four twigs on this branch, the County Law, the Town Law, the General City Law, and the Village Law.
■The Constitution (art. X, §§ 1-6) provides organic, general, legislative authority to enact all corporate law. The basic corporate statute classifies corporations, including “public,” in turn including “ municipal ” (General Corporation Law, § 2); then defines ‘ ‘ public corporation ” as “ includes a municipal corporation ” (General Corporation Law, § 3, subd. 1); “ municipal corporation ” as “ includes a county, city, town, village and school district ” (General Corporation Law, § 3, subd. 2); “ corporate law ” to mean “ the general statutes relating to corporations included in the consolidated laws of which this chapter is a part” (General Corporation Law, § 3, subd. 18). The General Municipal Law (§ 2) provides that “ municipal corporation * * * includes only a county, town, city and village.” Lastly, the City of Buffalo has its special charter (art. 3, § 33, subd. [12]) and ordinances (eh. LXX, §§ 1-25) covering zoning. All of these provisions in pari materia shall be read together to construe and interpret them correctly, starting with the Constitution and ending with the ordinances. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §§ 97, 221, 222, 223.)
Thus, when a section in the General Municipal Law applies to a case, it shall be read together with any related section in the General City Law; both are to be given full effect according to the intent of the Legislature. Section 239-m of the General Municipal Law, entitled “ Notice of certain proposed municipal zoning actions to be submitted to county, metropolitan or regional planning agency; report thereon; final action ” applies to “ any city, town or village ’ ’ and provides, in part: “If such planning agency disapproves the proposal, or recommends modification thereof, the municipal agency having jurisdiction shall not act contrary to such disapproval or recommendation except by a majority vote of all the members thereof and after the adoption of a resolution fully setting forth the reasons for such contrary action.” (Emphasis supplied.) This section was written generally so as to apply to a city, town or village without repeating it in the General City Law, the Town Law and the Village Law.
The related section 81 of the General City Law, entitled “ Board, of appeals ” provides, in part (subd. 1.): “ The concurring vote of four members of the board shall be necessary to *249 reverse any order, requirement, decision or determination of any such administrative official, or to decide in favor of the applicant any matter upon which they are required to pass under any such ordinance or to effect any variation in such ordinance. ’ ’ (Emphasis supplied; L. 1920, ch. 743, as amd. by L. 1928, ch. 106; L. 1940, oh. 367; L. 1961, ch. 236.)
Eespondent board was created pursuant to section 21 of chapter LXX of the Ordinances of the City of Buffalo and sections 81 and 81-a of the General City Law.
This court has jurisdiction to entertain this 11 Article 78” proceeding. (General City Law, § 81; § 82, as amd. by L. 1961, ch. 574.) The board did not abuse its discretion and did not act arbitrarily according to this record. (Burlinson v. Zoning Bd. of Appeals, 275 App. Div. 723.)
The 4 to 1 majority required by section 81 of the General City Law is a “ clear ” majority as required by section 239-m of the General Municipal Law, as are the “bare” majorities as required by section 179-b of the Village Law and section 267 of the Town Law. The word “ majority ” used in section 239-m, was intended to apply to city, town and village, therefore, it was aptly used.
The Legislature has expressed its policy and intent that it is in the public interest that certain classes of zoning actions by a city, town or village be “reviewed” by the county planning agency concerned, as an “ aid ’ ’ in co-ordinating such zoning actions. (General Municipal Law, § 239-1, added by L. 1960, ch. 1041, as amd. by L. 1961, ch. 835.)
‘ ‘ Within thirty days after receipt of a full statement of such referred matter, the county, metropolitan or regional planning agency to which referral is made, or an authorized agent of said agency, shall report its recommendations thereon to the referring municipal agency, accompanied by a full statement of the reasons for such recommendations. If such planning agency fails to report within such period of thirty days or such longer period as may have been agreed upon by it and the referring agency, the municipal body having jurisdiction to act may do so without such report. If such planning agency disapproves the proposal, or recommends modification thereof, the municipal agency having jurisdiction shall not act contrary to such disapproval or recommendation except by a majority vote of all the members thereof and after the adoption of a resolution fully setting forth the reasons for such contrary action. ’ ’ (General Municipal Law, § 239-m.)
This legislative mandate imposed on municipal zoning boards of appeal is jurisdictional; it is a condition precedent to the *250 acquiring of jurisdiction by such boards; unless complied with, these boards are powerless to act.
In this case, the decision of September 13,1961, though unanimous, was premature and void; the decision of October 11,1961 was 3 to 2, not 4 to 1, therefore, it was insufficient. The answer to the question raised is: Yes.
The municipal zoning boards of appeal subject to these statutes should follow them with care, particularly as to the “ majority vote ” required to act contrary to a disapproval or recommended modification of the planning agency, and as to the adoption of the “ resolution fully setting forth the reasons for such contrary action. ’ ’
Here is a striking example of the need for such review and aid by planning agencies. The September 13,1961 hearing was brief, superficial and without benefit of the planning agency’s report with reasons stated; thus, the 5 to 0 decision for reversal. After receipt of such report and a full hearing provoked thereby, the true perspective of the problem was presented to the board; thus, the 3 to 2 decision for reversal.
The practice to co-ordinate zoning actions is wise and necessary. Substantial performance of the steps in hearing and deciding zoning appeals should be a minimal standard in the public interest. No less should be approved. This proceeding is dismissed upon the merits, without costs.